## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| JASMIN BRUNK, on behalf of | ) | |
| Herself and other similarly situated | ) | |
| Plaintiff, | ) | |
| | ) | 1:15-cv-11863 |
| v. | ) | |
| | ) | |
| | ) | JURY DEMANDED |
| CAREER EDUCATION CORPORATION | ) | |
| CENTRAL CREDIT SERVICES, LLC, | ) | |
| Defendants. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Jasmin Brunk, individually and on behalf of all others similarly situated, by and through her attorneys of record, brings this action against Defendant Career Education Corporation ("CEC") and Central Credit Services, LLC ("Central Credit" and with CEC collectively "Defendants") alleges on personal knowledge, investigation of counsel, and on information and belief as follows:

## PARTIES

1.      Plaintiff Jasmin Brunk is a natural person and resides in Wyandotte County, Kansas

2.      CEC is a Delaware corporation with its principal place of business in Schaumburg, Illinois.  CEC is a citizen of Illinois.  CEC is registered to do and is doing business in Illinois and throughout the United States.

3.      Central Credit is a Florida corporation with its principal place of business in Ambler, Pennsylvania.  Central Credit is registered to do and is doing business in Illinois and throughout the United States.

## VENUE AND JURISDICTION

4.      This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and

47 U.S.C. § 227 *et seq*.

5.      This Court has personal jurisdiction over CEC because it resides in Illinois, has

submitted to Illinois jurisdiction by registering with the Secretary of State to do business in the

state of Illinois, and a substantial part of the wrongful acts alleged in this Complaint were

committed in Illinois, including the contract entered into by Defendants that led to the calls to the

Plaintiff and proposed class members.

6.      This Court has personal jurisdiction over Central Credit because it has submitted

to Illinois jurisdiction by registering with the Secretary of State to do business in Illinois and a

substantial part of the wrongful acts alleged in this Complaint were committed in Illinois,

including the contract entered into by Defendants that led to the calls to the Plaintiff and

proposed class members.

7.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because CEC

resides in this District and a substantial part of the events giving rise to Plaintiff's claims

occurred in this District.

### THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C. § 227

8.      In 1991, Congress enacted the TCPA in response to a growing number of

consumer complaints regarding certain telephone practices.

9.      The TCPA makes it unlawful "to make any call (other than a call made for

emergency purposes or made with the prior express consent of the called party) using an

automatic telephone dialing system or an artificial or prerecorded voice … to any telephone

number assigned to a … cellular telephone service." *See* 47 U.S.C. § 227(b)(1)(A)(iii).  The

TCPA provides a private cause of action to persons who receive calls in violation of 47 U.S.C. § 227(b)(1)(A). *See* 47 U.S.C. § 227(b)(3).

10.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used.

11.     On January 4, 2008, the FCC released a Declaratory Ruling wherein it confirmed that autodialed and prerecorded message calls to a wireless number by a creditor (or on behalf of a creditor) are permitted only if the calls are made with the "prior express consent" of the called party. The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 23 F.C.C. Rcd. 559, 564-65 ¶¶ 9-10 (2008).

12.     In the same Declaratory Ruling, the FCC emphasized that both the creditor and the third party debt collector may be held liable under the TCPA for debt collection calls. ("A creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules. Calls placed by a third party collector on behalf of that creditor are treated as if the creditor itself placed the call….A third party collector may also be liable for a violation of the Commission's rules.") *Id.* at 565 ¶ 10.

## **FACTUAL ALLEGATIONS**

**A.      Factual Allegations Regarding Plaintiff**

13.     Plaintiff is a "person" as defined by 47 U.S.C. § 153(39).

14.     Central Credit called Plaintiff's cellular telephone on at least the following approximate dates and times:

      a.   October 5, 2015 at 10:03 AM;

      b.   October 12, 2015 at 9:05 AM.

15.     The caller ID for these calls was (816) 895-7158.

16.     Other caller IDs may have been used by Central Credit, for calls directed to consumers.

17.     When Plaintiff answered the call, there was a click and a distinctive pause before the calling party came on the line, which indicated to her that thecal was made using an automatic telephone dialing system ("ATDS").

18.     During the call Plaintiff received on October 12, 2015, Central Credit revealed the purpose of the call stating that it was calling for "CTU Denver".

19.     The Central Credit employee that called the Plaintiff was "Connie Maikesh," who stated that Central Credit could be reached at (877) 209-4163.

20.     "CTU Denver" refers to Colorado Technical University ("CTU"), which is owned and operated by Defendant CEC.

21.     Plaintiff does not have a relationship with or owe a debt to CEC, CTU, or Central Credit.

22.     Upon information and belief, there were other calls, too; both by Central Credit and possibly other debt collectors on behalf of CEC.

23.     Plaintiff did not consent to either of the ATDS calls to her cellular telephone.

24.     Plaintiff and the class have been substantially damaged by Defendants' ATDS calls.  Plaintiff and Class Members' privacy has improperly invaded, they were either charged for

the calls or valuable minutes that they purchased were used in dealing with the calls, and they were harassed and annoyed.

**B.      Factual Allegations Regarding CEC**

25.     CEC owns and operates various for-profit educational institutions, including CTU.

26.     CEC reports CTU's student receivables on its quarterly filings with the Securities and Exchange Commission.

27.     CEC sets policy for CTU's student loans and collections.  For example, in its 2015 third quarter 10Q report CEC reported the following policies regarding student loans:

a.      "Generally, a student receivable balance is written off once it reaches greater than 90 days past due."

b.      "Our standard student receivable allowance estimation methodology considers a number of factors that, based on our collection experience, we believe have an impact on our repayment risk and ability to collect student receivables." (Emphasis added).

c.      "To assist students in completing their educational programs, we had previously provided extended payment plans to certain students and also had loan agreements with Sallie Mae and Stillwater National Bank and Trust Company [] which required us to repurchase loans originated by them to our students after a certain period of time.  We discontinued providing extended payment plans to students ..."

28.     CEC maintains a do-not-call list on CTU's behalf.

29.     Based on CTU's enrollment information, CEC should know whether collection calls is seeks to have made on its behalf are to persons currently or formerly enrolled at CTU and whether money is owed for that attendance.

30.     On information and belief, CEC employs and controls the actions of collection agents who make collection calls on behalf of its for-profit colleges, including CTU, including contracting for those services.

31.     CEC directs or authorizes the conduct constituting the statutory violations alleged herein.  CEC establishes, approves, and ratifies CTU's policies and practices, oversees operations, and is (was) directly involved in the business practices that violated the TCPA.

32.     At all times material to the subject matter of this litigation, CEC had the authority and responsibility to prevent or correct unlawful collection practices taken on behalf of CTU and its agents, and formulated, directed, controlled, and participated in the collection acts and practices of CTU that violated the TCPA, including the acts and practices set forth in this Complaint.

33.     Defendant CEC is liable for the TCPA violations alleged above because it is directly involved in, authorized, or ratified the CTU collection operations that violate the TCPA within the scope of its ownership, management, and control of CTU.

C.     **Factual Allegations Regarding Central Credit**

34.     Central Credit makes collection calls on behalf of CEC for monies owed to CTU.

35.     On information and belief the contract for performing collection work on behalf of CTU is by and between CEC and Central Credit.

36.     Central Credit uses telephone dialing equipment that has the capacity to dial telephone numbers without human intervention, as evidenced by the delay between the time Plaintiff answered the call and when a live person came on the line.

37.     On information and belief, CEC and Central Credit have information identifying those cellular phone numbers that it may or may not contact using an autodialer.

38.     Central Credit should also have computerized information identifying when it calls a wrong number.

39.     Indeed, the Illinois Administrative Code, 68 Ill. Admin. Code 1210.140(b)(1)(A)(iii) requires that debt collection agencies including Central Credit keep detailed records of telephone calls:

> b) At each office of a registered collection agency, for each individual debtor's account, the agency shall keep the following:
>
> > 1)     Account records for each account in excess of $l00 being processed.
> >
> > > A)     These records shall contain:
> > >
> > > > (iii) Dates and record of contents of each telephone contact with all individuals regarding debtor's account, including identification of individual who made the contact and to whom that individual spoke[.]

40.     Thus, as a collection agency registered in Illinois, Central Credit has an affirmative duty during each call it makes to record the identity of the party that answered its call and the content of the call.

## CLASS ACTION ALLEGATIONS

41.     _Class Definition._  Pursuant to CR 23(b)(2) and (b)(3), Plaintiff brings this case as a class action on behalf of a National Class defined as follows:

> All persons in the United States to whom Defendants or a third party acting on Defendants' behalf, made one or more non-emergency telephone calls: (a) to their cellular telephone number; (b) through the use of an automatic telephone dialing system or an artificial or prerecorded voice; and (c) at any time in the period that begins four years before the date of filing the initial complaint in this matter to trial.

Collectively, all of these persons will be referred to as Class Members.  Plaintiff represents, and is a member of, the Class.

Excluded from the Class are Defendants, any entity in which Defendants have a controlling interest or that has a controlling interest in Defendants, and Defendants' legal representatives, assignees, and successors.  Also excluded are the judge to whom this case is assigned and any member of the judge's immediate family.

42.    <u>Numerosity</u>.  Plaintiff does not know the exact number of members in the Class but Plaintiff reasonably believes that the Class is so numerous that joinder of all members is impracticable.  On information and belief, the Class has more than 1,000 members.  Moreover, the disposition of the claims of the Class in a single action will provide substantial benefits to all parties and the Court.

43.    <u>Commonality</u>.  There are numerous questions of law and fact common to Plaintiff and members of the Class.  These common questions of law and fact include, but are not limited to, the following:

a.    Whether Defendants or their affiliates, agents, or other persons or entities acting on Defendants' behalf violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS or artificial or prerecorded voice;

b.    Whether Defendants or their affiliates, agents, or other persons or entities acting on Defendants' behalf knowingly or willfully violated 47 U.S.C. § 227(b)(1)(A) by making any call, except for emergency purposes, to a cellular telephone number using an ATDS or artificial or prerecorded voice, thus entitling Plaintiff and members of the Class to treble damages;

c.    Whether CEC is vicariously liable for calls made by Central Credit on behalf of CTU;

        d.      Whether the Defendants can meet their burden of showing they obtained

consent (*i.e.*, consent that is clearly and unmistakably stated), to make such calls;

        e.      Whether the Defendants' conduct was knowing or willful;

        f.      Whether the Defendants are liable for statutory damages; and

        g.      Whether the Defendant should be enjoined from engaging in such conduct

in the future.

44.    <u>Typicality</u>.  Plaintiff's claims are typical of the claims of the Class.  Plaintiff's

claims, like the claims of Class, arise out of the same common course of conduct by Defendants

and are based on the same legal and remedial theories.

45.    <u>Adequacy</u>.  Plaintiff will fairly and adequately protect the interests of the Class.

Plaintiff has retained competent and capable attorneys with significant experience in complex

and class action litigation, including consumer class actions and TCPA class actions.  Plaintiff

and his counsel are committed to prosecuting this action vigorously on behalf of the Class and

have the financial resources to do so.  Neither Plaintiff nor his counsel have interests that are

contrary to or that conflict with those of the proposed Class.

46.    <u>Predominance</u>.  Defendants have engaged in a common course of conduct toward

Plaintiff and members of the Class.  The common issues arising from this conduct that affect

Plaintiff and members of the Class predominate over any individual issues.  Adjudication of

these common issues in a single action has important and desirable advantages of judicial

economy.

47.    <u>Superiority</u>.  A class action is the superior method for the fair and efficient

adjudication of this controversy.  Classwide relief is essential to compel Defendants to comply

with the TCPA.  The interest of individual members of the Class in individually controlling the

prosecution of separate claims against Defendants is small because the damages in an individual action for violation of the TCPA are small.  Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims because the calls at issue are all automated.  Class treatment is superior to multiple individual suits or piecemeal litigation because it conserves judicial resources, promotes consistency and efficiency of adjudication, provides a forum for small claimants, and deters illegal activities.  There will be no significant difficulty in the management of this case as a class action.

48.    <u>Injunctive and Declaratory Relief Appropriate</u>.  Defendants have acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with respect to the Class appropriate on a classwide basis.  Moreover, on information and belief, Plaintiff alleges that the automated calls made by Defendants or their affiliates, agents, or other persons or entities acting on Defendants' behalf that are complained of herein are substantially likely to continue in the future if an injunction is not entered.

**CAUSES OF ACTION**
**FIRST COUNT**
**VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT**
**47 U.S.C. § 227(b)(1)(A)**

49.    Plaintiff incorporates by reference the foregoing paragraphs of this Complaint as if fully set forth herein.

50.    The foregoing acts and omissions of Defendants or their affiliates, agents, or other persons or entities action on Defendants' behalf constitute numerous and multiple violations of the TCPA, 47 U.S.C. § 227(b)(1(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS or artificial or prerecorded voice.

51.     As a result of the Defendants'—or their affiliates, agents, or other persons or entities acting on Defendants' behalf—violations of 47 U.S.C. § 227(b)(1)(A), Plaintiffs and members of the Class presumptively are entitled to an award of $500 in statutory damages for each and every call to their cellular telephone numbers using and ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

52.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting the Defendants or their affiliates, agents, or other persons or entities acting on their behalf from violating the TCPA, 46 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in the future.

53.     Plaintiff and members of the Class are also entitled to an award of attorneys' fees and costs.

## SECOND COUNT
## KNOWING AND/OR WILLFUL VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT, 47 U.S.C. § 227(b)(1)(A)

54.     Plaintiff incorporates by reference all other paragraphs of this Complaint as if fully stated herein.

55.     The foregoing acts and omissions of the Defendants or their affiliates, agents, or other persons or entities acting on their behalf constitute numerous and multiple knowing and/or willful violations of the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to the cellular telephone numbers of Plaintiff and members of the Class using an ATDS and/or artificial or prerecorded voice.

56.     As a result of the Defendants or their affiliates, agents, or other persons or entities acting on Defendants' behalf knowing or willful violations of the TCPA, 47 U.S.C.

§ 227(b)(1)(A), Plaintiff and members of the Class are entitled to treble damages of up to $1,500 for each and every call to their cellular telephone numbers using an ATDS and/or artificial or prerecorded voice in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

57.     Plaintiff and members of the Class are also entitled to and do seek injunctive relief prohibiting Defendants or their affiliates, agents, or other persons or entities acting on their behalf from violating the TCPA, 47 U.S.C. § 227(b)(1)(A), by making calls, except for emergency purposes, to any cellular telephone numbers using an ATDS and/or artificial or prerecorded in the future.

58.     Plaintiff and Class members are also entitled to an award of attorneys' fees and costs.

### REQUEST FOR RELIEF

WHEREFORE, Plaintiff, on her own behalf and on behalf of Class Members, prays for judgment against Defendants as follows:

A.     Injunctive relief prohibiting such violations of the TCPA by the Defendants in the future;

B.     As a result of Defendants' statutory violations of 47 U.S.C. § 227(b), Plaintiff seeks for herself and each Class member $500 in statutory damages for each and every call that violated the TCPA, to be paid jointly and severally by Defendants;

C.     As a result of the Defendants' knowing or willful violations of 47 U.S.C. § 227(b), Plaintiff seeks for herself and each Class member treble damages, as provided by statute, of up to $1,500 for each and every call that violated the TCPA, to be paid jointly and severally by Defendants;

D.      An award of attorneys' fees and costs to counsel for Plaintiff and the Class, to be paid jointly and severally by Defendants;

E.      An order certifying this action to be a proper class action pursuant to Federal Rule of Civil Procedure 23, establishing an appropriate Class and any Subclasses the Court finds appropriate, finding that Plaintiff is a proper representative of the Class, and appointing the lawyers and law firms representing Plaintiff as counsel for the Class;

F.      A declaration (1) that the equipment used by Central Credit to call plaintiff and the class constitutes an Automatic Telephone Dialing System for purposes of the TCPA, (2) that CEC is liable for the debt collection calls that Central Credit made to collect CEC debts, and (3) that persons (including plaintiff) who did not provide their cellular telephone numbers to CEC or Central Credit did not consent to receive calls for purposes of the TCPA.

G.      Such other relief as the Court deems just and proper.

## DEMAND FOR JURY

Plaintiff demands a trial by jury for all issues so triable.

Respectfully submitted,

/s/Alexander H. Burke

Alexander H. Burke
Daniel J. Marovitch
**BURKE LAW OFFICES, LLC**
155 N. Michigan Ave., Suite 9020
Chicago, IL 60601
(312) 729-5288
(312) 729-5289 (fax)
ABurke@BurkeLawLLC.com
www.BurkeLawLLC.com
Co-Counsel for Plaintiff

Larry P. Smith
David M. Marco

**SMITHMARCO**, P.C.
205 North Michigan Avenue, Suite 2940
Chicago, IL 60601
(312) 222-9028
(888) 418-1277 (fax)
lsmith@smithmarco.com
dmarco@smithmarco.com
www.SmithMarco.com

## DOCUMENT PRESERVATION DEMAND

Plaintiff hereby demands that the defendant take affirmative steps to preserve all recordings, data, databases, call records, consent to receive autodialed or prerecorded calls, emails, recordings, documents and all other tangible things that relate to the allegations herein, plaintiff or the putative class members, or the making of telephone calls, the events described herein, any third party associated with any telephone call, campaign, account, sale or file associated with plaintiff or the putative class members, and any account or number or symbol relating to any of them.  These materials are very likely relevant to the litigation of this claim.  If defendant is aware of any third party that has possession, custody or control of any such materials, plaintiff demands that defendant request that such third party also take steps to preserve the materials.  This demand shall not narrow the scope of any independent document preservation duties of the defendant.

/s/  Alexander H. Burke